**IT IS ORDERED as set forth below:**

**Date: June 24, 2026**

_____
**Lisa Ritchey Craig**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF**: | : | **CASE NUMBER** |
| | : | |
| TAMMY MICHELLE LENEAR, | : | BANKRUPTCY CASE |
| | : | 25-57366-LRC |
| Debtor. | : | |
| | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 7 OF THE |
| | : | BANKRUPTCY CODE |

**ORDER REGARDING TRUSTEE'S OBJECTION**
**TO DEBTOR'S EXEMPTION**

The issue before the Court is whether certain rights to receive payment owed

to debtor Tammy Michelle Lenear (the "Debtor") may be exempted under O.C.G.A.

§ 44-13-100(a)(2)(E).

On July 1, 2025 (the "Petition Date"), Debtor filed a voluntary Chapter 7

bankruptcy petition. On August 20, 2025, Debtor amended her schedules to include two rights to receive payment due to Debtor after termination of her previous work under the American Family Agent Agreement[1] (the "Contract"). Debtor claimed the full value of the payments under the Contract as exempt pursuant to O.C.G.A. § 44-13-100(a)(2)(E). Neil C. Gordon, the Chapter 7 trustee (the "Trustee") filed an objection to Debtor's claimed exemptions (Doc. 19) (the "Objection").

Having considered the Objection, Debtor's response to the Objection (Doc. 21) and her brief in opposition (Doc. 24), as well as the Trustee's reply brief (Doc. 26),[2] the Court concludes that the Objection cannot be sustained as a matter of law, as the payments are of the type that can be exempted under O.C.G.A. § 44-13-100(a)(2)(E), and that the Court needs further evidence to determine the extent the payments at issue are reasonably necessary for Debtor's support or the support of Debtor's dependents.

## **FINDINGS OF FACT**

---

1 The Contract was entered into between Debtor, American Family Mutual Insurance Company, American Family Life Insurance Company, and American Standard Insurance Company of Wisconsin (collectively, the "Contract Parties"). Identical copies of the Contract were attached to the Trustee's Objection (Doc. 19, Exhibit A) and Debtor's brief in opposition (Doc. 24, Exhibit 1). Neither Debtor nor the Trustee has disputed the terms or authenticity of the Contract copies.

2 The Court heard arguments from Debtor and Trustee on November 6, 2025. At the hearing, the parties agreed that the Court should decide the case on the record and did not present further evidence.

Debtor was an independent contractor selling insurance policies under the terms of the Contract from August 17, 2006, to April 30, 2021. (Doc. 19, p. 4). The Contract, at its core, was a business agreement between the Contract Parties, which detailed each parties' rights and responsibilities. Most of the Contract provisions are not directly relevant to the issue before the Court, except for Section 6 of the Contract. Section 6 of the Contract contains "Mutual Agreements"—among them are the various provisions for Debtor to be paid extended earnings after termination of the Contract. (Doc. 19, Exhibit A, pp. 13–18). The Contract provided that, if certain conditions were met, Debtor would be eligible to receive two types of extended earnings payments. (*Id.*). Debtor met those conditions and began receiving the payments. (Doc. 19, p. 4).

Based on the terms of the Contract and Debtor's schedules, the payments owed to Debtor are two separate assets. The first asset consists of a combination of "Mutual" and "Standard" monthly payments totaling $31,358.60, as of the petition date. (Doc. 19, p. 5). The second asset is a "Life" monthly payment totaling approximately $18,000, as of the petition date. (*Id.*).

### 1. The "Mutual" and "Standard" Payments

To be eligible for the "Standard" and "Mutual" extended earnings payments

3

after termination of the Contract, Debtor was required to work under the Contract for at least 10 years. (Doc. 19, Exhibit A, p. 14). The Contract Parties agreed that Debtor had 12 years of eligible service under the Contract. After termination of the Contract and satisfying the additional conditions precedent in Section 6(l)(1), such as a requirement to turn over company documents and records, Debtor became eligible to receive the "Standard" and "Mutual" payments. The amount of "Mutual" payments due to Debtor was based on a percentage of "Mutual" service fees earned by Debtor in the 12 months preceding termination of the Contract. (Doc. 19, Exhibit A, pp. 13–14, 18). Because Debtor's length of service under the Contract was at least 12 years but less than 13 years, she was entitled to 70% of the "Mutual" service fees she earned. (*See Id.*). Additionally, Debtor was entitled to 55% of the "Standard" renewal services fees earned during the six months preceding termination of the Contract. (Doc. 19, Exhibit A, p. 15).

The total contract termination extended earnings payments from the "Mutual" and "Standard" payments combined was $188,136.26, payable in 60 payments of $3,135.60 per month.[3] (Doc. 19, Exhibit A, p. 20). As of the Petition Date, Debtor

---

3 The initial payment was slightly more, as Debtor was paid $3,135.86 for the first month only. (Doc. 19, Exhibit A, p. 16).

had received 50 months of the payments and was still owed 10 monthly payments under the Contract, totaling $31,358.60. (Doc. 19, p. 5).

### 2. The "Life" Payments

To be eligible for the "Life" payments, Debtor was required to have worked under the Contract for at least 24 consecutive months prior to termination. Debtor also met this requirement and was eligible for the "Life" payments. (Doc. 19, Exhibit A, p. 16). Section 6(t) of the Contract provided for the method of calculation for the payments, alongside a payment structure based on the amount of in-force premiums from any first policy-year insurance policies that Debtor had written. (*Id.*). The structure set forth in Section 6(t) did not affect the total amount payable but did affect the number of years in which the "Life" payments were payable. (*See* Doc. 19, Exhibit A, p. 16).

As of the petition date, Debtor was owed approximately $18,000 in "Life" payments, payable in amounts between $150 – $250, with approximately 6 years and 10 months of payment remaining. (Doc. 19, p. 5).

### 3. Manner of Payments and Additional Terms

While the aforementioned portions of the Contract outline the preconditions to payment and method of calculation for the amounts, Sections 6(o) – (q) provide

5

for the manner and structure of payments. (Doc. 19, Exhibit A, pp. 15–16). First, because Debtor was less than 60 years old at the time of Contract termination, the "Standard" and "Mutual" payments are paid evenly over a period of 60 months. (Doc. 19, Exhibit A, p. 15). Second, the payment structure for all extended earnings payments varies for agents who are terminated between ages 60 and 65 or have at least 25 years of service when the Contract is terminated (Doc. 19, Exhibit A, p. 15). However, Debtor did not meet these conditions, so they were inapplicable. Third, according to Section 6(u), if the Debtor had breached any provisions of the agreement, particularly the covenant not to compete contained in Section 6(k), she would have forfeited all rights to payment under the Contract. (Doc. 19, Exhibit A, p. 16). Debtor did not trigger this forfeiture provision. Lastly, the Contract provides that a lump sum would be paid to Debtor's legal representative if she were to die after termination of the Contract, but before all contract termination extended earnings are fully paid. (*Id.*).

## **CONCLUSIONS OF LAW**

Under Section 541 of the Bankruptcy Code,[4] once a debtor has filed the

---

4 Title 11 of the United States Code.

6

bankruptcy petition, "all property of the debtor becomes property of the estate." *In re Graham*, 64 B.R. 469, 471 (Bankr. S.D. Tex. 1986). Once the property enters the estate, the debtor is entitled to exempt certain property. *Id.; see also In re Cattell*, 32 B.R. 311 (Bankr. S.D. Ohio 1983). Section 522(d) of the Bankruptcy Code details the federal exemptions that debtors may claim "unless a state otherwise designates the specific exemptions available to debtors residing within that state." *In re Dowell*, 456 B.R. 578, 580 (Bankr. M.D. Fla. 2011). The purpose of exemptions in bankruptcy proceedings is to help facilitate a debtor's "fresh start." *United States v. Sec. Indus. Bank*, 459 U.S. 70, 72, n.1 (1982).

To further this purpose, bankruptcy exemptions should generally be liberally construed by courts in favor of the debtor. *Wallace v. McFarland (In re McFarland)*, 500 B.R. 279, 283 (Bankr. S.D. Ga. 2013) (citing *In re Michael*, 339 B.R. 798, 801 (Bankr. N.D. Ga. 2005)); *In re Lawless*, 2012 Bankr. LEXIS 3345, at *19 (Bankr. E.D. Tenn. July 20, 2012) ("[E]xemptions are determined as of the date upon which the bankruptcy case is commenced, are construed liberally in favor of debtors, and should be construed in light of the purpose for which [they are] created.").

The Trustee, as the objecting party, must prove by a preponderance of evidence that Debtor's claim of exemption is improper. FED. R. BANKR. P. 4003(c)).

7

Because Georgia has "opted out" of the federal exemptions provided for in

§ 522(d) of the Bankruptcy Code, Georgia debtors are only permitted to exempt

property under state law or federal law other than Bankruptcy Code § 522(d). *See*

O.C.G.A. § 44-13-100(b); *In re Ambrose*, 179 B.R. 982, 984 (Bankr. S.D. Ga. 1995).

O.C.G.A. § 44-13-100 contains the exemptions for a Georgia resident.

Specifically, O.C.G.A. § 44-13-100(a)(2)(E), provides that a debtor may

exempt:

> 2) The debtor's right to receive:
>
> …
>
> (E) A payment under a pension, annuity, or similar plan or contract on
>
> account of illness, disability, death, age, or length of service, to the
>
> extent reasonably necessary for the support of the debtor and any
>
> dependent of the debtor[.]

Therefore, the Court must answer several questions to decide if the payments

under the Contract are eligible for exemption under O.C.G.A. § 44-13-100(a)(2)(E).

First, does the Contract provide for a right to receive a payment under a pension,

annuity, or similar plan or contract on account of illness, disability, death, age, or

length of service? Second, is the right to receive payment under the Contract the type

8

of annuity or similar plan or contract which qualifies for exemption under O.C.G.A.

§ 44-13-100(a)(2)(E)? And third, is the right to receive payment under the Contract

a substitute for wages? If the Court finds all these questions to be answered in the

affirmative, then the payments under the Contract are exempt under O.C.G.A. § 44-

13-100(a)(2)(E).

If the Court determines that the payments may be exempted, the Court must

lastly determine to what extent the Contract payments are reasonably necessary for

the support of Debtor and any dependent of Debtor.

1. **Does the Contract provide for a right to receive [a] payment under a
   pension, annuity, or similar plan or contract on account of illness,
   disability, death, age, or length of service?**

Debtor argues that the Contract is either an annuity or similar plan or contract

and that her entitlement to both monthly payments was on account of her length of

service. Debtor points to the Contract provisions which provide for the method of

calculation of payments owed to Debtor for the "Mutual" and "Standard' payments,

which includes length of service as a factor. Additionally, Debtor argues that her

right to receive the "Life" payments was based on years of service as well—24+

months of consecutive work under the Contract was required for her to qualify for

the "Life" payments. Additionally, Debtor argues that her right to receive both

9

payments was also on account of her age.

In opposition, the Trustee argues that the Contract payments are "not a retirement plan or annuity or anything similar to that," primarily because Debtor can receive the bulk of the funds at age 47 – 52 years old and that the funds do not replace income for retirement purposes. (Doc. 19, p. 7). The Trustee also contends that it is significant that the term "retirement" does not appear in the Contract and that there is a forfeiture provision.

The Supreme Court of Georgia, in *Silliman v. Cassell*, answered the certified question[5] of what constitutes an "annuity" under O.C.G.A. § 44-13-100(a)(2)(E): an annuity "is an obligation to pay an amount at regular intervals for a certain or uncertain period of time." 292 Ga. 464, 467 (2013).

Given the ruling in *Silliman*, the Court finds Debtor's arguments persuasive. While the rights to payment under the Contract in this case are unique, they do provide for an "obligation to pay an amount at regular intervals for a certain or uncertain period of time." Debtor was owed the "Mutual" and "Standard" payments in regular monthly interval, for a period of 60 months. Moreover, the "Life"

---

5 The Eleventh Circuit Court of Appeals, in *Silliman v. Cassell (In re Cassell)*, 688 F.3d 1291 (11th Cir. 2012), concluded that the issue presented a "significant state law issue that is likely to arise again" and presented the issue to the Supreme Court of Georgia to resolve as a certified question. *Id.*, at 1301.

payments were also owed to Debtor at a regular monthly interval, a period of 11 years. Even if, as the Trustee argues, Debtor would have activated the forfeiture provision, the payments would have still been obligations to pay an amount at regular intervals, just for an uncertain time period. Therefore, The Court finds the Trustee's argument unpersuasive and that the rights to payment under the Contract are "an obligation to pay an amount at regular intervals for a certain or uncertain period of time." *See Silliman*, 292 Ga. at 467.

The Court also agrees with Debtor that the Contract is a "similar plan or contract on account of illness, disability, death, age or length of service." The United States Supreme Court in *Rousey v. Jacoway* held that the phrase "on account of illness, disability, death, age, or length of service[,]" in the nearly identical language of the federal exemption statute meant "because of" illness, disability, death, age, or length of service. *Rousey v. Jacoway*, 544 U.S. 320, 327 (2005) (analyzing 11 U.S.C. § 522(d)(10)(E)). Put simply, the right to payment must have a "causal connection" to illness, disability, death, age or length of service. *Lawless*, 2012 Bankr. LEXIS 3345, at *24 (Bankr. E.D. Tenn. July 20, 2012) (citing *Rousey,* 544 U.S. at 326).

To receive the "Standard" and "Mutual" payments under the Contract, Debtor was required to provide services under the Contract for at least 10 years. Debtor met

11

that requirement. For Debtor to qualify for the "Life" payments, she had to work under the Contract for at least the preceding 24 consecutive months. Debtor also met that requirement. Moreover, the plain language of the terms of the Contract, particularly Section 6(m), as amended, and Section 6(t), provides the formula that the company uses to assess how much an agent is owed once any contract is terminated, and that formula explicitly factors in years of service.

Consequently, Debtor's right to receive payments under the Contract is clearly causally connected to or "because of" Debtor's length of service.[6]

The Court is not convinced by the Trustee's argument that the omission of the word "retirement" in the Contract is material to the classification. Although pensions and annuities can and will often be retirement vehicles, they may take a variety of different forms. Regardless, the Trustee's narrow reading ignores that O.C.G.A. § 44-13-100(a)(2)(E) also allows a "similar plan or contract on account of illness, disability, death, age or length of service" to be exempted.

Based on the foregoing conclusions, the Court rules that the right to receive payments under the Contract is an "annuity[,] or similar plan or contract on account

---

6 Because the Court finds that the rights to payment under the Contract are "on account of" Debtor's length of service, the Court need not find whether the payments are also "on account of" Debtor's age.

12

of illness, disability, death, age or length of service."[7]

**2. Is the Contract the type of annuity or similar plan or contract on account of illness, disability, death, age or length of service which qualify for exemption under O.C.G.A. § 44-13-100(a)(2)(E)?**

However, not all "annuities or similar plan[s] or contract[s] on account of illness, disability, death, age or length of service" are automatically eligible for exemption under O.C.G.A. § 44-13-100(a)(2)(E). As detailed by the *Silliman* court, if every type of "obligation to pay an amount at regular intervals for a certain or uncertain period of time" was subject to exemption under O.C.G.A. § 44-13-100(a)(2)(E), far too many annuities would qualify:

> If we were to apply only this definition of annuity for purposes of O.C.G.A. § 44-13-100(a)(2)(E), every annuity regardless of its origin or purpose would be exempt from a debtor's bankruptcy estate and protected from creditors. We do not believe this is the result intended by our legislature when it adopted O.C.G.A. § 44-13-100(a)(2)(E).

*Silliman*, 292 Ga. at 467 (citing *In re Bramlette*, 333 BR 911, 920–21 (Bankr. N.D. Ga. 2005)); *In re Michael*, 339 BR 798, 803 (Bankr. N.D. Ga. 2005) (stating that not every annuity qualifies for O.C.G.A. § 44-13-100 (a) (2) (E) exemption).

Likewise, the Eleventh Circuit Court of Appeals in *McFarland v. Wallace*

---

7 Because the *Silliman* and *McFarland* courts found that the key inquiry as to *any* exemptible plan under O.C.G.A. § 44-13-100(a)(2)(E) is whether it substitutes for wages, it is unnecessary to decide whether the Contract qualifies as an "annuity" or instead as a "similar plan or contract." *See Silliman*, 292 Ga. at 468; *McFarland v. Wallace (In re McFarland)*, 790 F.3d 1182 (11th Cir. 2015) (emphasis added).

affirmed that regardless of whether the right to payment is classified as (1) a pension, (2) an annuity, or (3) a similar plan or contract on account of illness, disability, death, age or length of service, "the common factor among exempt plans is that they provide a substitute for wages." *McFarland v. Wallace (In re McFarland)*, 790 F.3d 1182, 1189 (11th Cir. 2015) (citing *Silliman*, 292 Ga. at 468) ("[W]e conclude that in deciding whether a particular annuity is of the type intended to come within the OCGA § 44-13-100 (a) (2) (E) exemption, the pertinent question is whether it provides income as a substitute for wages.")).

Therefore, for any of the rights to payment under the Contract to qualify for exemption under O.C.G.A. § 44-13-100(a)(2)(E), they still must provide a substitute for wages.

### 3.  Are the Contract payments a substitute for wages?

Debtor argues that the payments are a substitute for wages and that it is significant that Debtor was not able to contribute to a 401k, IRA, or pension in relation to her work under the Contract. Debtor asserts that the, instead of those options, the Contract payments were tailored as a retirement plan, due to their structure, consideration of Debtor's age at termination of the Contract, and similar tax treatment as an annuity or pension. Debtor asserts that the Court should consider

14

the factors listed in *Andersen v. Ries*, 259 B.R. 687 (8th Cir. BAP 2001) and

*Boudreaux v. Sheffield*, 507 B.R. 400 (S.D. Ga. 2014), and that these factors weigh

in her favor.

While acknowledging that the key feature of annuities or other similar plans

subject to exemption under O.C.G.A. § 44-13-100(a)(2)(E) is whether they act as a

wage replacement, the Trustee argues that the payments do not act as a substitute for

wages. The Trustee contends that, because the payments are based on prior earned

commission income that is paid from in-force insurance premiums on policies the

Debtor sold during her work under the Contract, they are not a wage replacement.

The Trustee points to the holding in *Silliman* to argue that income that is a substitute

for wages must specifically be in the form of salary or hourly compensation. The

Trustee believes it is material that those are W-2 income forms, whereas the

payments from the Contract arose from work as a Form 1099 independent contract

agent. Additionally, the Trustee argues that the compensation is not replacing lost

income after retirement, since Debtor has not retired.

**a.   Factors in determining whether payments are a substitute for wages**

As Debtor and the Trustee have noted, to decide if the payments under the

15

Contract provide a substitute for wages, courts have often relied on several factors,[8] including: "(1) the nature of the plan or contract; (2) the circumstances surrounding the purchase of the plan or contract; (3) whether contributions to the plan were made over time; (4) the extent of the debtor's control over the asset; and (5) whether the asset is part of a prebankruptcy planning scheme." *Andersen v. Ries*, 259 B.R. 687 (8th Cir. BAP 2001); *accord In re Mooney*, 503 B.R. 916, 921 (Bankr. M.D. Ga. 2014) (citing *Silliman*, 292 Ga. at 468–69).

In this case, the Contract provides Debtor with essentially a deferred commission for insurance policies that she sold while working under the Contract. The nature of the Contract appears to be consistent with the payment acting as a substitute for wages.

Here, the Contract was not purchased by Debtor, instead, it was primarily in place to define the rights and responsibility of the Contract Parties. The Contract terms regarding Debtor's right to receive extended earnings payments were just a portion of the larger Contract agreement between the Contract Parties. However, the

---

8 At least one other court has expressed wariness over an overarching use of the *Anderson* factors. "However, I have doubts regarding the propriety of employing some of the Andersen factors with respect to the federal bankruptcy exemption statute, 11 U.S.C. §522(d)(10)(E).The history of these Andersen factors, and the impact of the Supreme Court's holding in Rousey on the continuing viability of those factors, warrants further examination." *In re Wainer*, 634 B.R. 311, 322 (Bankr. E.D. Pa. 2021).

16

right to receive extended earnings does not resemble an investment or a mere savings account.

Next, the contributions in this case were not "made" over time but instead earned through Debtor's sales in the 12 months prior to termination. Debtor was entitled to payments to begin after her employment terminated, assuming she had met certain conditions and complied with all Contract provisions. These payments came as essentially deferred commission on Debtor's prior services.

As to Debtor's control of the assets, Debtor does not appear to have control over the assets paid by the plan. While the Trustee is correct that Debtor could have forfeited the payments, that level of control is much less determinative than, for example, a debtor being able to control when the payments begin. *See Sheffield*, 507 B.R. 400 (Bankr. S.D. Ga. 2014); *Michael*, 339 B.R. 798 (Bankr. N.D. Ga. 2005). In those cases, the debtor's rights to payments functioned more as investment vehicles or savings accounts because they could be deferred at the debtor's election. Debtor has no such similar level of control over the Contract payments in this case and has not caused the forfeiture clause to go into effect.

Finally, the Contract was clearly not a pre-bankruptcy planning procedure. The effective date of the Contract was August 17, 2006, and Debtor had worked

17

under the Contract for over 12 years before it was terminated. Additionally, Debtor

first began receiving payments nearly four years prior to the bankruptcy proceeding.

Nothing indicates that such circumstances could be in any way construed as

bankruptcy planning.

In Debtor's case, the above factors weigh in favor of the payments as a

substitute for wages instead of merely a vehicle for investment or savings. While

both parties' reliance on *Silliman* and *Rousey* is well founded for the legal framework

at hand, neither is factually similar to this case.[9] *Rousey* dealt with the classification

of an IRA under the federal exemption statute. *Silliman* involved an annuity

purchased by a debtor, with direct testimony in the record that the debtor intended

the annuity to replace her wages in preparation for retirement. Other cases cited by

Debtor, such as *Sheffield* and *McFarland,* had significant factual differences as well.

Neither Debtor, the Trustee, nor the Court were able to find cases from this

Court or within the Eleventh Circuit that analyzed an annuity or similar plan or

contract that was factually similar to the Contract in this case. Therefore, the Court

---

9  While the Trustee's arguments in his reply brief (Doc. 26) with attached *Affidavit* of Spence Shumway, CPA, CIRA, holds weight that the economic and factual circumstances in this case are not similar to those in the *Silliman* case, the Court is not persuaded that the tax structure of the payments is directly relevant to whether the payments can be exempted. There is no indication from any cited authority or otherwise that the fact the Debtor was an independent contractor would prevent these payments from being a substitute for wages.

18

finds it instructive to view how courts in other circuits analyzing analogous state and federal exemption statutes have treated plans or contracts more factually similar to the Contract in this case.

**b.  How have courts handled more analogous contracts under the federal exemption statute and similar state exemption statutes?**

In *Commerce Bank v. McGowen*, 956 N.W.2d 128 (Iowa 2021), the Supreme Court of Iowa assessed a deferred compensation contract, analyzing whether it is exempt under Iowa law. The Iowa statute allows exemption of "[a] payment or a portion of a payment under a pension, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service," subject to certain conditions to avoid pre-bankruptcy planning abuse. This language is nearly identical to the relevant portion of the Georgia statute. *See* Iowa Code § 627.6(8)(e).

In *McGowen*, the debtor's compensation was a percentage of fees that the company had collected over the previous three fiscal years, and the payment of this compensation could be triggered by "separation from service, attainment of age sixty-seven, disability, death, or sale of substantially all of the company's assets." *McGowen*, 956 N.W.2d at 131. The debtor reached age sixty-seven and was entitled to payments in equal installments over ten years. *Id*. The Iowa court found it relevant

19

that, upon reaching age sixty-seven, the debtor was likely, although not necessarily entering a time when he would have decreased wages. *McGowen*, 956 N.W.2d at 136. However, the court also found the fact that the debtor was not actually retired did not mean the payments could not be exempted. *Id.*

For the same reason, the Trustee's argument that Debtor should not be able to exempt the payments in the present case simply because she is not of retirement age and will not receive the payments during retirement is unpersuasive. In Debtor's case, the only notable difference is the trigger event for receiving the payments was primarily debtor's years of service instead of age, which is still well encompassed by O.C.G.A. § 44-13-100(a)(2)(E). [10] The Supreme Court of Iowa, citing *Rousey*, ultimately ruled that the payments were exempt because they were triggered by debtor's age and the payments were a substitute for wages. *McGowen*, 956 N.W.2d at 137.

Another compelling case is *In re Lawless*, No. 10-36096, 2012 Bankr. LEXIS 3345 (Bankr. E.D. Tenn. July 20, 2012). In *Lawless*, a Tennessee bankruptcy court

---

10 *See Carmichael v. Osherow (In re Carmichael)*, 100 F.3d 375, 379 (5th Cir. 1996) (finding that under § 522(d)(10)(E), "[a]s long as the right to receive a payment under a plan or contract can be triggered by one or more of the five listed events, and is therefore exemptible, the fact that payments can also be triggered by some additional factor—or absence of some additional factor—cannot destroy exemptibility").

20

analyzed whether a deferred compensation plan could be exempted. *Id.* In that case, the debtor's plan was similar in structure and terms to the Contract in the present case—the debtor would be paid a percentage of commission on business performed over the last 12 months preceding cancellation of the plan. *Id.* at *9. In *Lawless*, the court found the plan to be one that was both "on account of death, age, or length of service," and intended to be a substitute for wages. *See id.* at *23–27. In finding the payments a substitute for wages, the court's determination turned on: the fact that the debtor had no control over the funds, the fact that the funds would be paid out only upon trigger events such as death or retirement, and the fact that the payments were compensation for services previously rendered. *Id.* at *26–28. The Tennessee court ultimately found the plan to not be subject to exemption under Tennessee law, but only because the plan failed to satisfy additional requirements of Tennessee law that were beyond the Georgia statute. *Id.* at *30–36; *See* Tenn. Code Ann. § 26-2-111(1)(D). Still, the *Lawless* court found a factually similar plan to the Contract to be "on account of death, age, or length of service" and found that it was "clear" the payments under that plan were substitutes for wages. *Lawless*, 2012 Bankr. LEXIS 3345, at *26–28.

Several other courts have found that a debtor could exempt payments under

21

factually similar contracts or plans under nearly identical state or federal exemption statutes provide compelling support for the Court's conclusion. *See In re Phillips*, 45 B.R. 529 (Bankr. N.D. Ohio 1984) (finding that a right to receive payments under a severance plan was entitled to exemption under the Ohio exemption statute because it was intended to provide a substitute for current earnings, as evidenced by the payments being calculated with a formula that uses a percentage of salary and years of service); *see also In re Recto*r, 134 B.R. 611   (Bankr. W.D. Mich. 1991) (finding that a right to receive payment based on termination of employment, like retirement, is akin to future earnings); *see also In re Rove*, 505 B.R. 502 (Bankr. E.D. Wis. 2013) (finding an equity account comprised of profits earned from sales by the debtor while debtor was employed to be a substitute for wages, and therefore eligible for exemption under § 522(d)(10)(E) of the Bankruptcy Code).

**c.   The payments under the Contract are a substitute for wages**

After considering the factors that the courts in the Eleventh Circuit have identified as relevant in determining whether payments under an annuity or similar plan or contract are a substitute for wages—as well as the rulings by the courts in the cases discussed above—the Court finds that the extended earnings payments due to Debtor after termination of the Contract are a substitute for wages.

## CONCLUSION

To prevail on the Objection to Debtor's exemption of the payments under the Contract, the Trustee has the burden of proof to show that the Contract was not a pension, annuity, or similar plan or contract, or that the payments were not a substitute for wages. The Trustee has not done so. To the contrary, the facts demonstrate that the Contract was an annuity or similar plan or contract and that the payments provided a substitute for wages. Accordingly, the payments under the Contract are the type which may be exempted under O.C.G.A. § 44-13-100(a)(2)(E).

The Court recognizes that the ability to exempt the right to payment under the Contract in this case may seem, on its face, unfair. Debtor is employed, has not reached retirement age, and no evidence shows that she has used or is using any of the money for retirement savings or as a substitute for wages in the most conventional sense of the words. Moreover, Debtor will receive all payments prior to reaching traditional retirement age.

Nevertheless, the Court concludes that the Georgia legislature determined the question of fairness when it enacted O.C.G.A. § 44-13-100(a)(2)(E). Indeed, the statute's limitation of the exemption to an amount "reasonably necessary for the support of the debtor and any dependent of the debtor" ensures that a debtor cannot

23

abuse the exemption, without placing an unnecessary limitation on the types of contracts or plans that a debtor may exempt.

Having concluded that the Contract does qualify for the exemption as "[a] payment under a pension, annuity or similar plan or contract on account of illness, disability, death, age or length of service," the Court must decide to what extent the payments under the Contract are "reasonably necessary for the support of the debtor and any dependent of the debtor." Because the Court has not taken evidence on that issue, the Court shall schedule an evidentiary hearing. Accordingly,

IT IS ORDERED that The Trustee's Objection is **OVERRULED IN PART**, and an evidentiary hearing will be scheduled by further order of the Court.

**END OF DOCUMENT**

**Distribution List:**

Neil C. Gordon
Gordon & Pettie, LLC
1600 Parkwood Circle, SE
Suite 500
Atlanta, Georgia 30339

Office of the United States Trustee
362 Richard B. Russell Building
75 Ted Turner Drive, SW

Atlanta, GA 30303

Brian S Limbocker
Limbocker Law Firm, LLC
2230 Towne Lake Parkway
Bldg. 100, Suite 140
Woodstock, GA 30189

Tammy Michelle Lenear
808 Cameron Trail
Acworth, GA 30102

Spence A. Shumway, CPA
Stonebridge Accounting & Forensics LLC
P.O. Box 1290
Grayson, GA 30017